TAMARA W. ASHFORD
Acting Assistant Attorney General

LANDON YOST
Trial Attorney, Tax Division, U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-2144
Fax: (202) 307-0054
Landon.M.Yost@usdoj.gov
Western.Taxcivil@usdoj.gov

*Of Counsel*:
KAREN L. LOEFFLER
United States Attorney
District of Alaska

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>vs.<br><br>WILLIAM L. GIFFORD; GRANDMA B. HOLDINGS, LLC; MIZPAH GROUP HOLDING; and TAMI MOWREY,<br><br>                              Defendants. | Case No.<br><br>**UNITED STATES' COMPLAINT** |

The plaintiff, the United States of America ("United States"), through its

undersigned counsel, alleges the following:

## **INTRODUCTION**

1. This is a civil action brought by the United States to foreclose federal tax

liens against two parcels of real property owned by taxpayer William L. Gifford

("Gifford"), but titled in the name of Gifford's nominees (the "subject property"). The subject property is located in Alaska.

2. The United States is concurrently bringing an action to reduce federal tax assessments against Gifford to judgment in the District of Nevada, in case no. 2:14-cv-01158-APG-VCF, the proper venue for that action pursuant to 28 U.S.C. § 1396 since Gifford resides in Nevada, and since the tax liabilities accrued in Nevada.

## AUTHORIZATION FOR SUIT

3. This action is brought pursuant to 26 U.S.C. §§ 7401 and 7403 at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 26 U.S.C. §§ 7402 and 7403 and 28 U.S.C. §§ 1331, 1340, and 1345.

5. Venue properly lies in the District of Alaska pursuant to 28 U.S.C. § 1391 because the subject property is located in Alaska.

6. This Court has personal jurisdiction over William L. Gifford because of his contacts with Alaska, including the purchase and ownership of the subject property in Alaska.

## IDENTIFICATION OF DEFENDANTS

7. William L. Gifford is the sole owner of the subject property, against which the United States has federal tax liens arising from Gifford's tax liabilities.

8.	Defendant Grandma B. Holdings, LLC, is made a party to this action in accordance with 26 U.S.C. § 7403(b) because title to one of the parcels of subject property is held in its name.

9.	Defendant Mizpah Group Holding is made a party to this action in accordance with 26 U.S.C. § 7403(b) because title to one of the parcels of subject property is held in its name.

10.	Defendant Tami Mowrey is made a party to this action in accordance with 26 U.S.C. § 7403(b) because she is believed to reside at the subject property and may claim an interest in the subject property.

## THE SUBJECT PROPERTY

11.	The first of the two parcels comprising the subject property is located at 57745 Taku Street, Homer, Alaska, and is legally described as follows:

> Lot Twenty-six (26), C&H ESTATES, according to Plat No. 80-23, in the Homer Recording District, Third Judicial District, State of Alaska'
>
> SUBJECT TO all reservations, restrictions, encumbrances and easements of record or ascertainable by physical inspection, if any;
>
> TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

(the "Taku property").

12.	By statutory warranty deed recorded March 12, 2001, James B. Borden conveyed the Taku property to Gifford.

13.	By warranty deed recorded March 14, 2008, Gifford purported to convey the Taku property to Grandma B Holdings.

14.	The second of the two parcels comprising the subject property is legally described as follows:

> The Northwest one-quarter of the Southwest one-quarter (NW1/4 SW1/4) of Section 15, Township 6 South, Range 13 West, Seward meridian, EXCEPTING THEREFROM Bear Creek Heights, according to Plat No. 79-104, and Bear Creek Heights Unit Two, according to Plat No. 82-91, in the Homer Recording District, Third Judicial District, State of Alaska;
>
> SUBJECT TO all reservations, restrictions, encumbrances and easements of record or ascertainable by physical inspection, if any;
>
> TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

(the "Bear Creek Heights property").

15. By statutory warranty deed dated December 15, 2000, Kenneth Arndt conveyed the Bear Creek Heights property to Gifford.

16. The deed referred to in paragraph 15, above, described the Bear Creek Heights Property as described in paragraph 14, except that it referred to "Township **5** South" (emphasis added), instead of "Township 6 South." On December 24, 2001, a corrected statutory warranty deed was filed that referred to the property using the legal description in paragraph 14 above, referring to "Township 6 South."

17. By warranty deed recorded April 27, 2009, Gifford purported to convey the Bear Creek Heights property to Mizpah Group Holding. This deed described the Bear Creek Heights Property by referring to "Township 5 South."

18. By warranty deed recorded September 25, 2009, Gifford again purported to convey the Bear Creek Heights property to Mizpah Group Holding. This deed described the Bear Creek Heights Property by referring to "Township 6 South."

## RECORDED TAX LIENS AGAINST THE SUBJECT PROPERTY

19. On September 5, 2008, a duly authorized delegate of the Secretary of Treasury timely recorded in Homer Recording District, Alaska, a Notice of Federal Tax Lien ("NFTL") against Gifford against the subject property for his unpaid federal income tax liabilities for the 2001-2005 tax years.

20. On May 3, 2010, a duly authorized delegate of the Secretary of Treasury timely recorded in Homer Recording District, Alaska, a NFTL against Gifford against the subject property for his unpaid federal income tax liabilities for the 2006 tax year.

21. On August 15, 2011, a duly authorized delegate of the Secretary of Treasury timely recorded in Homer Recording District, Alaska, a NFTL against Gifford against the subject property for his unpaid federal income tax liabilities for the 2004-2005 tax years.

22. On June 11, 2012, a duly authorized delegate of the Secretary of Treasury timely recorded in the Homer Recording District, Alaska, a NFTL against Grandma B. Holdings, LLC as the nominee and alter ego of William L. Gifford, pertaining to Gifford's unpaid federal income tax liabilities for the 2001, 2002, and 2004-2006 tax years.

23. On April 29, 2014, a duly authorized delegate of the Secretary of Treasury timely recorded in the Homer Recording District, Alaska, an amended NFTL against Grandma B. Holdings, LLC as the nominee and alter ego of William L. Gifford, pertaining to Gifford's unpaid federal income tax liabilities for the 2001, 2002, and 2004-2006 tax years. This Notice specifically identified the Taku property as the property to which the federal tax liens attached.

24. On June 11, 2012, a duly authorized delegate of the Secretary of Treasury timely recorded in the Homer Recording District, Alaska a NFTL against Mizpah Group Holding as the nominee of William L. Gifford, pertaining to Gifford's unpaid federal income tax liabilities for the 2001, 2002, and 2004-2006 tax years.

25. On April 29, 2014, a duly authorized delegate of the Secretary of Treasury timely recorded in the Homer Recording District, Alaska an amended Notice of Federal Tax Lien against Mispah (sic) Group Holding as the nominee of William L. Gifford, pertaining to Gifford's unpaid federal income tax liabilities for the 2001, 2002, and 2004-2006 tax years. This Notice specifically identified the Bear Creek Heights property as the property to which the federal tax liens attached.

26. On November 25, 2013, a duly authorized delegate of the Secretary of Treasury timely refiled in the Homer Recording District, Alaska, a NFTL against Gifford, pertaining to his unpaid federal income tax liabilities for the 2001 tax year.

27. On November 25, 2013, a duly authorized delegate of the Secretary of Treasury timely refiled in the Homer Recording District, Alaska, a NFTL against Grandma B. Holdings, LLC as the nominee and alter ego of William L. Gifford, pertaining to Gifford's unpaid federal income tax liabilities for the 2001 tax year.

28. On November 25, 2013, a duly authorized delegate of the Secretary of Treasury timely refiled in the Homer Recording District, Alaska, a NFTL against Mizpah Group Holding as the nominee of William L. Gifford, pertaining to Gifford's unpaid federal income tax liabilities for the 2001 tax year.

# FIRST CLAIM FOR RELIEF:
# NOMINEE/ALTER EGO/CONSTRUCTIVE TRUST

29. By this reference, the United States realleges and incorporates the allegations contained in paragraphs 1 through 28, as if fully set forth herein.

30. Gifford purported to transfer the subject property to Grandma B. Holdings, LLC and Mizpah Group Holding after he was made aware of his substantial tax liabilities.

31. Neither Grandma B. Holdings, LLC nor Mizpah Group Holding paid Gifford any consideration for the purported transfers of the subject property.

32. After the purported transfers, Gifford retained control over the subject property.

33. Gifford is the sole member and owner of Grandma B. Holdings, LLC.

34. Gifford is the sole trustee of Mizpah Group Holding.

35. Gifford caused Mizpah Group Holding to sell another parcel of real property.

36. To the extent that maintenance costs, utilities, and property taxes were paid for the subject property, Gifford ultimately paid these expenses.

37. Gifford purchased the subject property with his own funds, and has at all relevant times enjoyed all the incident burdens and benefits of ownership.

38. Neither Grandma B. Holdings, LLC nor Mizpah Group Holding has in any way interfered with Gifford's enjoyment, control, or use of the subject property, and Gifford continues to exercise complete dominion and control over all aspects of the property.

39. Neither Grandma B. Holdings, LLC nor Mizpah Group Holding has, nor have they ever had, any ownership or other controlling interest in the subject property. Grandma B. Holdings, LLC and Mizpah Group Holding are mere nominees or alter egos of Gifford with respect to the title and ownership of the subject property. In the alternative, the Court should find that Grandma B. Holdings, LLC and Mizpah Group Holding hold the subject property in a constructive trust for the benefit of Gifford, and that the United States' tax liens attach to that property.

40. Defendant Tami Mowrey has no ownership interest in the subject property.

41. The United States is entitled to an order that title to the subject property is deemed to be solely the property of Gifford.

## SECOND CLAIM FOR RELIEF:
## FRAUDULENT TRANSFER

42. By this reference, the United States realleges and incorporates the allegations contained in paragraphs 1 through 41, above, as if fully set forth herein.

43. The purported transfers of the subject property to Grandma B. Holdings, LLC and Mizpah Group Holding were intended by Gifford to hinder, delay, or defraud the United States of present and future lawful taxes and Gifford made them without receiving adequate consideration. Therefore, pursuant to Alaska Statute § 34.40.010, et. seq., the transfers were and are fraudulent and of no effect as to the United States.

44. The purported transfers of the subject property were made (1) without the exchange of reasonably equivalent value and (2) during a period when Gifford had incurred, intended to incur, and/or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

45. Gifford retained control of the subject property after the purported transfers, and the purported transfers were made to Gifford's nominees.

### THIRD CLAIM FOR RELIEF:
### TO FORECLOSE FEDERAL TAX LIENS ENCUMBERING THE SUBJECT PROPERTY

46. By this reference, the United States realleges and incorporates the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

47. On the dates, in the amounts, and for the tax periods and types set forth below, a duly authorized delegate of the Secretary of the Treasury made the following timely and proper assessments against Gifford, as also described in the United States' complaint against Gifford filed in the District of Nevada, in case no. 2:14-cv-01158-APG-VCF:

| Type of Tax | Tax Period | Date Assessed | Amount Assessed[1] | Balance Due[2] |
|---|---|---|---|---|
| Form 1040 | 2001 | 11/17/2003<br>11/17/2003<br>11/17/2003<br>11/17/2003<br>11/17/2003<br>10/29/2007<br>11/04/2013 | $39,771.00 (T)<br>$4,342.98 (I)<br>$3,977.10 (P1)<br>$8,948.47 (P3)<br>$1,589.39 (P2)<br>$5,965.64 (P1)<br>$37,499.10 (I) | $20,981.85 |
| Form 1040 | 2002 | 03/24/2008<br>03/24/2008<br>03/24/2008<br>03/24/2008<br>03/24/2008<br>06/17/2013 | $90,816.00 (T)<br>$39,270.87 (I)<br>$22,116.50 (P1)<br>$19,904.85 (P3)<br>$1,389.44 (P2)<br>$41,428.71 (I) | $220,159.36 |
| Form 1040 | 2004 | 02/11/2008<br>02/11/2008 | $100,173.00 (T)<br>$20,034.60 (P4) | $216,171.71 |

---

[1] Key: T = Tax Assessed; P1 = Failure to Pay Tax Penalty; P2 = Estimated Tax Penalty; P3 = Late Filing Penalty; P4 = Accuracy Penalty; I = Interest.

[2] Calculated to December 31, 2014.

|  |  | 02/11/2008<br>10/06/2008<br>10/06/2008<br>10/06/2008<br>11/02/2009<br>11/01/2010 | $18,784.46 (I)<br>$1,540.67 (I)<br>$1,259.40 (P4)<br>$6,297.00 (T)<br>$21,354.07 (P1)<br>$5,263.42 (P1) |  |
|---|---|---|---|---|
| Form 1040 | 2005 | 08/21/2006<br>08/21/2006<br>08/21/2006<br>02/11/2008<br>02/11/2008<br>02/11/2008<br>09/29/2008<br>09/29/2008<br>11/02/2009<br>11/01/2010<br>11/04/2013 | $4,834.00 (T)<br>$3.15 (P1)<br>$3.32 (I)<br>$18,679.60 (P4)<br>$93,398.00 (T)<br>$16,415.51 (I)<br>$1,477.20 (P4)<br>$7,386.00 (T)<br>$20,106.09 (P1)<br>$5,089.08 (P1)<br>$39,289.29 (I) | $209,125.64 |
| Form 1040 | 2006 | 03/29/2010<br>03/29/2010<br>03/29/2010<br>03/29/2010<br>10/31/2011<br>11/04/2013 | $435.15 (P3)<br>$3,331.00 (T)<br>436.34 (I)<br>$348.12 (P1)<br>$29.01 (P1)<br>$36.14 (I) | $148.20 |

48.      In accordance with 26 U.S.C. § 6303, timely and proper notice of the assessments set forth in paragraph 47, above, has been given to Gifford, stating the amount and demanding payment thereof.

49.      Despite timely notice and demand for payment of the assessments set forth in paragraph 47, above, Gifford has neglected, refused, or failed to pay the assessments against him.

50.      Gifford remains indebted for the balance of the assessments described in paragraph 47 above, plus accrued interest and statutory additions according to law, less any payments or credits.

51.      Since the dates of the assessments described in paragraph 47, above, interest has accrued as provided by law. The total amount due and owing on the

assessments described in paragraph 47, above, plus accrued but unassessed interest, computed as to December 31, 2014, is $666,586.76.

52. Pursuant to 26 U.S.C. §§ 6321 and 6322, statutory liens for unpaid federal taxes arose in favor of the United States against all property or rights to property, whether real or personal, belonging to Gifford as of the dates of the assessments described in the paragraph 47, above, including the subject property. In addition, said liens immediately attached to all after-acquired property or rights to such property.

53. In accordance with 26 U.S.C. § 6323(f), Notices of Federal Tax Lien relating to the assessments described in paragraph 47, above, were duly filed and recorded at the Homer Recording District, Alaska.

54. The tax liens arising from the assessments described in paragraph 47, above, continue to attach to the subject property.

55. The tax liens arising from the assessments described in paragraph 47, above, have priority over all interests in the subject property acquired after the attachment of the tax liens, subject to the provisions of 26 U.S.C. Section 6323(a).

56. Under 28 U.S.C. Section 7403(c), the United States is entitled to a decree of sale of the subject property to enforce its tax liens.

WHEREFORE, the United States prays that the Court adjudge and decree:

A. That the United States has valid and subsisting federal tax liens by virtue of the assessments set forth in paragraph 47, above, on all property and rights to property belonging to Gifford, including his interest in the subject property;

B. That this Court determine and adjudge that Grandma B. Holdings and Mizpah Group Holding hold title to the subject property as the nominees/alter-egos of Gifford, or that they hold the subject property in a constructive trust for the benefit of Gifford, and that the United States has valid and subsisting federal tax liens that attach to the subject property;

C. That this Court determine and adjudge that the transfers of the subject property to the Grandma B. Holdings and Mizpah Group Holding were and are fraudulent, and that the transfers are utterly null and void and of no effect as to the rights of the United States as creditor of Gifford, and that the transfers be set aside;

D. That the federal tax liens against Gifford be foreclosed upon his interest in the subject property and that the subject property be ordered sold, and that the proceeds from such sale be distributed in accordance with the Court's findings as to the validity and priority of the liens and claims of all parties;

E. That the United States be granted its costs incurred in bringing this action, and for such other and further relief as the Court deems just and proper

Respectfully submitted this 18th day of July, 2014,

TAMARA W. ASHFORD
Acting Assistant Attorney General

By: /s/ Landon Yost
LANDON YOST
Trial Attorney

Of Counsel:

KAREN L. LOEFFLER
United States Attorney